J-S06044-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC JACKSON | : | |
| | : | |
| Appellant | : | No. 1588 EDA 2019 |

Appeal from the Judgment of Sentence Entered February 26, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0005662-2017

BEFORE:  PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    Filed: April 8, 2021

Eric Jackson (Jackson) appeals the judgment of sentence entered by the Court of Common Pleas of Delaware County (trial court).  Following a jury trial, he was found guilty of aggravated assault (18 Pa.C.S. § 2702(a)(1)); attempted murder (18 Pa.C.S. §§ 901, 2502); assault of a law enforcement officer (18 Pa.C.S. § 2702.1(a)); and illegal possession of firearms (18 Pa.C.S. § 6105).  The trial court imposed an aggregate prison term of 40 to 80 years.  Finding that none of Jackson's grounds for appellate relief have merit, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

**I.**

Jackson was arrested following an incident that took place at about 2:00 a.m. on August 17, 2017.[1]  That evening, while Officers Steven DiBello and Mitchell Holobowicz were patrolling an area where there had been a recent string of automobile break-ins, they noticed that two men were peering into a parked vehicle.  The officers immediately approached, identified themselves as police and stepped out of their patrol car.  The officers asked the suspects if they would speak to them and they initially complied.

Officer DiBello asked one of the two men (who he later identified as Jackson) for an identification card.  While the officers spoke with Jackson, their patrol car's emergency lights were illuminating the area.  Further, both officers pointed their flashlights in the direction of Jackson from about four feet away, which was sufficient for them to clearly see his entire body, including his face. *See* Trial Transcript, 10/31/1018, at p. 42.

The verbal encounter abruptly ended about ten seconds later when Jackson uttered a profanity and ran away.  Officer DiBello pursued on foot and Officer Holobowicz pursued in his vehicle after confirming that the second man had no weapons.  Officer DiBello chased Jackson through a series of residential properties, requiring him to run between houses and scale fences.  During the

---

[1] Our recitation of the material case facts is taken from trial transcripts found in the certified record.

chase, Officer DiBello saw Jackson drop and then quickly pick up a black object. He recounted that Jackson was wearing a white t-shirt, black sweatpants and black sneakers. Both officers briefly lost sight of Jackson at this stage of the chase.

A few seconds later, though, right as Officer Holobowicz caught up to Officer DiBello, they saw a person they believed to be Jackson sprawled on the roof of a garage that stood just four feet from the ground. They pointed their flashlights on the person, who then jumped off the roof of the garage and ran away, defying the officers' orders to stop. The officers did not clearly see the face of the person at that point, but they were able to see the contours of his body, as well as his clothing, which matched those worn by Jackson at the outset of the encounter.

The situation escalated when this same fleeing suspect tried to hide from the pursuing officers by squatting behind a parked car. As Officer DiBello neared, he saw the person he later identified as Jackson pull a gun from his waistband and point it at him. Jackson opened fire and Officer DiBello quickly took cover. After the gunfire ceased, Officers DiBello and Holobowicz resumed their pursuit.

The officers chased Jackson to a construction yard. They saw that when Jackson struggled to scale a perimeter fence, his white t-shirt caught on the fence's wiring and he dropped the gun he was carrying. Officer DiBello ordered

Jackson to stop and put his hands up, but he instead continued to flee and managed to escape.

Later that morning, an employee at the construction yard arrived at approximately 6 a.m. to begin work. This worker was aware of the manhunt in the area, so he became alarmed when he saw a shirtless man leaving the yard. He reported the intruder to police and surveillance videos captured the image of the man described in the call. A second worker also saw the shirtless man leaving the yard and jumping a fence to get into an adjacent lot.

In response to that report, Officers DiBello and Holobowicz came back to the scene and soon observed Jackson on a nearby street. Jackson was shirtless, displaying fresh scratches on his chest, and he wore black shorts and black sneakers. Both Officers DiBello and Holobowicz recognized Jackson as the man they had initially stopped and chased. They were then able to place Jackson under arrest.

A forensic investigation of the scene yielded a black handgun near where Jackson had climbed a fence to get into the construction yard. Fired cartridge casings, bullet specimens and bullet jackets were also recovered where Jackson had shot at Officer DiBello. Testing of those materials matched them to the firearm.

Police also recovered a fragment of a white t-shirt that had been caught on the top of the fence that Jackson had climbed. Further, police found a pair of black sweatpants in a nearby dumpster. A white t-shirt containing Jackson's

blood was found in that area, as well as an abandoned cellular phone. The fresh cuts on Jackson's chest would have been consistent with a difficult climb over a wire fence.

Jackson admitted during police questioning that he was one of the people who had encountered Officers DiBello and Holobowicz near the construction yard. He claimed that two other men (his brother and a friend) were with him, and that he was not the person who had possessed or discharged a firearm that night. Jackson maintained that at all relevant times, he was wearing a black shirt and shorts, and that the cellular phone recovered at the scene did not belong to him.

Despite Jackson's denials, the cellular phone number he gave to police was the same number assigned to the phone that police had found at the crime scene. The data extracted from the phone included text messages sent by "Eric" which is Jackson's first name. There were also numerous photos of Jackson saved on the phone – even images of him wearing the same black sweatpants and white t-shirt worn by the man who had fled from Officers DiBello and Holobowicz. Text messages in the phone sent within six hours of the encounter with the police referred to Jackson's possession and attempted sale of a "strap" which he acknowledged is a slang term for a firearm.

At trial, Jackson's sole defense was misidentification. He admitted he was present at the scene the night of the shooting, that the cellular phone belonged to him, and that he fled from the police, explaining that he was on

parole and was afraid of being found in violation of the terms of his release. He attributed the shooting to his friend named "Quay." Jackson insisted that he had not been wearing the black sweatpants and white t-shirt that was worn by the shooter and recovered by police.

The jury found Jackson guilty as outlined above. He then timely filed post-sentence motions challenging the sufficiency and weight of the evidence, as well as discretionary aspects of the sentence. The trial court denied the post-sentence motion in its entirety. Jackson timely appealed and he now asserts four issues:

> 1. Whether the verdicts of guilty are based on insufficient evidence, where [Jackson] testified that a third person was responsible for the shooting, police lost sight of [Jackson] for a sufficient period of time for another person to be involved, police did not see the face of the perpetrator, and physical evidence recovered by police was not linked to [Jackson].
>
> 2. Whether the verdicts are against the weight of the evidence, where [Jackson] could not be identified as the person who committed the shooting and the circumstantial evidence was not of such amount and quality to support a finding that [Jackson] is guilty.
>
> 3. Whether a jury instruction under **Commonwealth v. Kloiber**, [106 A.2d 820 (Pa. 1954)], that identification testimony should be accepted by the jury with caution, is required under circumstances showing that the complaining witness did not in fact see the person who committed the shooting but identified [Jackson] at trial as the perpetrator nonetheless.
>
> 4. Whether the sentence of 40 to 80 years amounts to an abuse of discretion, where the sentence was imposed based on the serious nature of the crime only and without regard to mitigating evidence submitted by [Jackson].

Appellant's Brief, at 5-6.

- 6 -

**II.**

Jackson first argues that the Commonwealth's evidence was legally insufficient because, as a matter of law, he could not be identified as the person who fled from police and shot at Officer DiBello on the evening in question.[2] He claims he was wearing different clothes than those worn by the shooter, and that the officers had confused him with one of his companions who had been responsible for the shooting. According to Jackson, the absence of visual identification evidence and the lack of forensic evidence linking him to the weapon used in the shooting should have resulted in his acquittal.

When reviewing a sufficiency claim, we must construe the evidence and all reasonable inferences in the light most favorable to the verdict winner. *See Commonwealth v. Peck*, 242 A.3d 1274, 1279 (Pa. 2020). The evidence is deemed sufficient if the jury, sitting as fact-finder, could have found that the evidence satisfied all elements of the charged offenses beyond a reasonable doubt. *See id.*; *Commonwealth v. Lyons*, 79 A.3d 1053, 1062 (Pa. 2013).

Direct or circumstantial evidence may be sufficient to sustain a conviction. *See Commonwealth v. Roney*, 866 A.2d 351, 356 (Pa. 2005); *Commonwealth v. Chmiel*, 639 A.2d 9, 11 (Pa. 1994); *Commonwealth v.*

---

[2] Sufficiency of the evidence is a question of law subject to a *de novo* standard of review. *See Commonwealth v. Woodard*, 129 A.3d 480, 489 (Pa. 2015).

*Martuscelli*, 54 A.3d 940, 947 (Pa. Super. 2012). In fact, some or all elements of an offense may be proven circumstantially as long as such evidence permits a reasonable inference that the element or elements are satisfied. *See Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011); *Commonwealth v. Palmer*, 751 A.2d 223, 228 (Pa. Super. 2000).

It is the province of the jury, sitting as the trier of fact, to determine the credibility of the witnesses and the weight to be afforded to the evidence, including that of identification testimony. *See Commonwealth v. Kitchen*, 162 A.3d 1140, 1144 (Pa. Super 2017); *Commonwealth v. Baker*, 24 A.3d 1006, 1020 (Pa. Super. 2011); *see also Commonwealth v. Donald*, 323 A.2d 67, 68 (Pa. Super. 1974) ("The weight of identification is for the fact finder."). In that capacity, the jury is free to believe all, part or none of the evidence. *See Commonwealth v. Johnson*, 668 A.2d 97, 101 (Pa. 1995); *Commonwealth v. Coleman*, 984 A.2d 998, 1002 (Pa. Super. 2009).

## A.

After reviewing the record, we determine that there was sufficient evidence from which the jury could conclude beyond a reasonable doubt that Jackson was guilty as charged. As to all of his convictions, the only disputed element is Jackson's identity as the shooter. However, there was ample direct and circumstantial evidence that established Jackson's identity as the man who fled from and shot at the two pursuing officers.

Jackson admitted to being among a group who initially fled from Officers DiBello and Holobowicz. He admitted that the phone abandoned at the scene belonged to him and that in recent text messages, he had discussed selling a gun. Photos in the phone depicted Jackson wearing the same black pants and white t-shirt worn by the shooter, notwithstanding Jackson's claim that he did not wear them on the night in question.

Regardless, police found an abandoned white t-shirt in the area with Jackson's blood on it, and when arrested nearby, he was shirtless and suffering from fresh cuts on his chest. While the scene of the crime was darkly lit, Officers DiBello and Holobowicz both testified that Jackson was the same man who they chased and who shot at Officer DiBello. They testified credibly that Jackson's face resembled the clearly illuminated face of the man they saw at the time of the initial stop. While the officers may have briefly lost sight of Jackson due to his attempt to elude them, their identification testimony was a matter of weight for the jury to decide. Thus, the evidence is legally sufficient.

**III.**

**A.**

We now turn to Jackson's related but distinct claim that his convictions are not sustained by the weight of the evidence and that the trial court erred in denying his post-sentence motion for a new trial on that ground.

When reviewing such claims, we afford a high degree of deference to the trial court's ruling, applying an abuse of discretion standard: "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, or partiality, as shown by the evidence of record." **Commonwealth v. Santos**, 176 A.3d 877, 882 (Pa. Super. 2017) (quoting **Commonwealth v. Antidormi**, 84 A.3d 736, 749-50 (Pa. Super. 2014)) (citations omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence." **Antidormi**, 84 A.3d at 758 (quoting **Commonwealth v. Widmer**, 744 A.2d 745, 753 (Pa. 2000)).

If the record supports the trial court's reasons and factual basis for its ruling on the weight of the evidence, then the trial court has not abused its discretion. **See Ambrogi v. Reber**, 932 A.2d 969, 974 (Pa. Super. 2007); **Commonwealth v. Cousar**, 928 A.2d 1025, 1036 (Pa. Super. 2007) (An appellate court reviews the trial court's exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence).

**B.**

Similar to his sufficiency claims, Jackson argues that the verdict is not supported by the weight of the evidence because the testifying officers did not clearly see the face of the perpetrator. Jackson argues that his identification

- 10 -

as the shooter was based on a momentary encounter between him and the officers at the outset of the incident.

He emphasizes that his DNA was not found on the black pants retrieved from the dumpster at the construction yard and his fingerprints were not found on the recovered weapon. He states that he was not seen in the area of the shooting until hours after it had occurred. Jackson contends further that the photos extracted from his cellular phone (depicting him wearing similar clothes to that of the shooter) were taken months before the shooting, giving them little probative value as to what he wore on the night in question.

Just as we explained with respect to Jackson's sufficiency claim, the Commonwealth proved through direct and circumstantial identification evidence that Jackson was the man who opened fire on Officer DiBello. The jury found the officers' identifications to be credible, and we cannot substitute our judgment for that of the fact-finder. Thus, the trial court did not abuse its discretion when denying Jackson's weight of evidence claim. **See Commonwealth v. Furness**, 153 A.3d 397, 403-04 (Pa. Super. 2016) (affirming denial of weight claim challenging witness's identification).

**IV.**

**A.**

Jackson's next issue is whether the trial court abused its discretion in denying a **Kloiber** instruction, which would have cautioned the jury about the eyewitnesses' physical ability to identify Jackson as the person who shot at

Officer DiBello. ***See generally Commonwealth v. Kloiber***, 106 A.2d 820 (Pa. 1954). Jackson claims that since the two officers did not see the face of the shooter clearly, and Jackson had eluded the officers in between the initial encounter and the shooting, the denial of a ***Kloiber*** instruction entitles him to a new trial.

"When a court instructs the jury, the objective is to explain to the jury how it should approach its task and the factors it should consider in reaching a verdict." ***Commonwealth v. Chambers***, 980 A.2d 35, 49 (Pa. 2009) (quotations omitted). Denial of a requested instruction warrants appellate remedy only if the trial court abused its discretion or committed an error of law that affected the outcome of the trial. ***Id.***

A ***Kloiber*** instruction may be proper in situations where something had physically hindered the eyewitness' ability to identify the defendant. ***See Commonwealth v. Brown***, 196 A.3d 130, 163 (Pa. 2018). Our Supreme Court held in ***Kloiber*** that:

> [W]here the witness is not in a position to clearly observe the assailant or he is not positive as to identity, or his positive statements as to identity are weakened by qualification, or by the failure to identify the defendant on one or more prior occasions, the accuracy of the identifications is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

***Kloiber***, 106 A.2d at 826–27.

Accordingly, a defendant is entitled to a ***Kloiber*** instruction where a witness: "(1) did not have an opportunity to clearly view the defendant; (2)

- 12 -

equivocated on the identification of the defendant; or (3) had a problem making an identification in the past." ***Commonwealth v. Ali***, 10 A.3d 282, 303 (Pa. 2010) (quoting ***Commonwealth v. Gibson***, 688 A.2d 1152, 1163 (Pa. 1997)).

The Court also explained in ***Kloiber*** that, "[w]here the opportunity for positive identification is good and the witness' identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution." ***Kloiber***, 106 A.2d at 826; ***Commonwealth v. Sanders***, 42 A.3d 325, 332 (Pa. Super. 2012) (same).

**B.**

In the present case, there is no dispute that the trial court thoroughly instructed the jury on how to weigh the credibility of witness testimony. ***See*** Trial Transcript, 11/2/2018, at pp. 99-103. The jury was advised on all the permissible factors that may come into play when determining whether or to what extent a witness's testimony is to be believed. Jackson's narrow claim is that he was entitled to a ***Kloiber*** instruction because – similar to his sufficiency and weight claims – the two officers did not clearly see the shooter's face after Jackson had fled from them.

The trial court properly denied the requested ***Kloiber*** instruction because the officers' identifications of Jackson were positive and unequivocal even after cross-examination. That the officers momentarily lost sight of

Jackson as he ran away from them did not physically affect their ability to positively identify him as the person who fled moments after contact, hid on a low garage roof and shot at Officer DiBello. Jackson's efforts to elude the officers did not compel the trial court to specifically instruct the jury to receive the officers' identification with caution.

On these facts, a **_Kloiber_** instruction was not required, and it was up to Jackson to persuade the jury, if he could, that the identifications of him as the shooter were not credible. Thus, we find that the trial court did not abuse its discretion or commit an error of law in denying the instruction.

**V.**

Lastly, Jackson makes a two-fold argument that the trial court imposed an excessive sentence without considering mitigating evidence, focusing instead only on the seriousness of the offenses. While the majority of the terms Jackson received were minimum mandatory sentences, he contends that the trial court's decision to impose them consecutively,[3] resulting in a longer aggregate term, was manifestly excessive despite falling within the permissible statutory range.

---

[3] The consecutive sentences Jackson received include a mandatory minimum term of 20 to 40 years for assault of a police officer; 10 to 20 years for attempted murder; and 10 to 20 years for possession of a firearm by a prohibited person.

Since these claims concern discretionary aspects of the sentence, Jackson had to invoke this Court's jurisdiction to consider them by first taking the necessary procedural steps and then demonstrating that the claims involve a "substantial question." *See generally Commonwealth v. Griffin*, 65 A.3d 932, 935-36 (Pa. Super. 2013). A "substantial question" exists if the appellant has made a colorable argument that the sentence violated a specific provision of the Sentencing Code or was contrary to the "fundamental norms underlying the sentencing process." *Commonwealth v. Johnson*, 873 A.2d 704, 708 (Pa. Super. 2005).

There is no dispute that Jackson complied with the procedures needed to raise his sentencing claim. However, claims of an excessive sentence are generally found not to constitute a substantial question that can be addressed on direct appeal. *See Commonwealth v. Caldwell*, 117 A.3d 763, 769 (Pa. Super. 2015) (en banc) ("A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question."). It is only in the "most extreme circumstances" that this type of claim is reviewable. *Id*.

The same holds true where an excessive sentence claim predicated on a consecutive term is coupled with a claim that mitigating circumstances were not considered. *See Commonwealth v. DiSalvo*, 70 A.3d 900, 903 (Pa. Super. 2013). "[T]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial

question for our review." **Id**. (quoting **Commonwealth v. Downing**, 990 A.2d 788, 794 (Pa. Super. 2010)); **Commonwealth v. Kraft**, 737 A.2d 755, 757 (Pa. Super. 1999) (same). As Jackson's sentencing claim is the type of issue that does not raise a substantial question, we cannot reach its merits.

Even if we were to proceed to the merits of Jackson's sentencing claims, we would conclude that no relief would be due. These claims are reviewed under an abuse of discretion standard. **See Commonwealth v. Perry**, 883 A.2d 599, 603 (Pa. Super. 2005) (explaining that decision to impose concurrent or consecutive terms is a matter of judicial discretion).

In order to prevail, an appellant must "establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." **Disalvo**, 70 A.3d at 903 (quoting **Commonwealth v. Glass**, 50 A.3d 720, 727 (Pa. Super. 2012)); **see also Commonwealth v. Raven**, 97 A.3d 1244, 1253 (Pa. Super. 2014).

At the sentencing hearing in this case, the trial court was demonstrably aware of all the extensive mitigating evidence that was presented on Jackson's behalf. The trial court expressly stated at the sentencing hearing and in its written opinion that it had reviewed a presentence investigation report prepared by the probation department; a psychological evaluation; a psychological evaluation addendum; a psychiatric evaluation; competency and intellectual evaluations; a substance abuse evaluation; the sentencing

memorandums prepared by both counsel; and victim impact statements.[4] *See* Trial Court Opinion, 7/17/2020, at pp. 31-32.

Further, the trial court took into account Jackson's difficult upbringing, substance abuse issues and medical health history. *See id*. at pp. 38-40. However, the trial court also balanced such considerations against competing sentencing factors, including Jackson's extensive history of violence and parole status at the time of the offenses. Thus, the record simply does not support Jackson's claim that the trial court either ignored any mitigating evidence or focused on any impermissible sentencing factors. Because the sentence was not excessively harsh nor manifestly excessive and was free of legal error, the trial court did not abuse its discretion in this respect.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/21

---

[4] *See Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988) ("When the sentencing court had the benefit of a pre-sentence investigation report ("PSI"), we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.").